UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FREDERIC J. BAKER, on behalf of himself and all others similarly situated, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 08-5668 |
| v. | : | MEMORANDUM OPINION & ORDER |
| INTER NATIONAL BANK and NETSPEND CORPORATION, | : | |
| Defendants. | : | |

This matter is before the Court on a renewed motion to dismiss the Amended Complaint.  Oral argument on the motion was heard on the record and that discussion is incorporated here.  For the reasons discussed that day, and those below, the motion will be granted in part and denied in part.

## **Background**

Plaintiff, Frederic J. Baker, has alleged that in or around November of 2007, his mother purchased[1] a Visa gift card in the amount of $50 and gave it to him.  (Am. Compl., ¶ 13.)  A $4.95 purchase fee applied, as disclosed on the gift card packaging, which contained certain "terms and conditions" which were to "apply to purchaser and any subsequent holder of the card by gift or otherwise."  (Id. ¶¶ 14, 20.)  The following provisions were also included on the packaging:

"Card good through 11.09."

"The funds on this card do not expire."

"The monthly administrative fee of $2.95 will be waived for the first 6 months from the date of purchase."

---

[1]The purchase was made from a supermarket in Pennsylvania.  (Am. Compl. ¶ 13.)

(Am. Compl., ¶ 16.)

Plaintiff used the card in December of 2007 to make purchases at Borders Books in Marlton, New Jersey and at the Regal Cinemas in Burlington, New Jersey. (Id. ¶ 15.) On April 30, 2008 and again on May 31, 2008, Defendants[2] charged a $4.95 monthly maintenance fee to the card. (Am. Compl. ¶ 18.)

Plaintiff alleges (1) Defendants did not disclose the $4.95 monthly maintenance fee, or any other type of recurring monthly fee of $4.95 associated with the gift card, (2) the representation that the card was good through 11.09 was necessarily false because the accumulation of monthly fees would make the $50 gift card valueless and unusable well before November 2009, even if no purchases were made; (3) similarly, the representation that the funds do not expire was necessarily false because the accumulation of monthly fees would make the $50 gift card "expire," even if no purchases were made; and (4) the representation that "[t]he monthly administrative fee of $2.95 will be waived for the first 6 months from the date of purchase" was necessarily false because it was Defendants' practice and policy to charge and collect monthly fees of $4.95 after the first six months."

As such, Plaintiff alleges that Defendants have violated the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2[3] by employing unfair and deceptive practices,

---

[2]The gift card packaging indicates that it was issued by Defendant Inter National Bank, and Defendant NetSpend is an authorized independent sales organization and third party servicer of Inter National Bank with respect to the gift cards.

[3]The NJCFA protects consumers against "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . . of any merchandise . . . ." N.J. Stat. Ann. § 56:8-2.

"including, but not limited to: (a) misrepresenting the expiration date of the Gift Card; (b) misrepresenting that "the funds on this card do not expire"; (c) misrepresenting the terms and the amount of the monthly fee charged by Defendants; and (d) collecting and/or attempting to collect monthly fees in excess of the amount they were permitted to collect."  Plaintiff also brings a claim under New Jersey's Truth-In-Consumer Contract, Warranty, and Notice Act, N.J. Stat. Ann. § 56:12-15, asserting that by including a provision that states that Defendants will deduct a $2.95 monthly fee from the balance of the card after the first six months, "except where (or unless) prohibited by law," while Defendants instead deduct the sum of $4.95 as a monthly fee, the Defendants include a provision that violates a clearly established right of the consumer or responsibility of the seller.  Finally, there is a claim for unjust enrichment.

Accordingly, on November 17, 2008, Plaintiff filed this case as a putative class action on behalf of himself and those similarly situated in the following Class:

> All persons who purchased or used an All Access Visa Gift Card in the form attached to the Amended Complaint, in any amount, in New Jersey at any time from a date six (6) years prior to the filing of the Complaint and continuing through to the completion of this litigation.

Plaintiff premised the Court's jurisdiction on the Class Action Fairness Act, 28 U.S.C. § 1332(d), which grants district courts original jurisdiction over "any civil action in which the matter in controversy exceeds the [aggregate] sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant," and the number of members of the putative class is 100 or more.  The Court previously granted limited discovery to assure that the amount in controversy was met.

Now, Defendants NetSpend Corporation and Inter National Bank have reinstated a previous motion to dismiss the Amended Complaint for lack of subject matter jurisdiction and failure to state a claim, arguing that Plaintiff has not alleged Article III "injury in fact." In their factual attack on the Amended Complaint, Defendants argue that Texas law, rather than New Jersey law, should apply and reveal that

> the Amended Complaint alleges a partial set of facts which affirmatively convey the erroneous impression that Plaintiff suffered an "ascertainable loss" of $4.00 resulting from a $2.00 administrative fee overcharge in April 2008 and another such overcharge in May 2008, [but] Plaintiff – or someone else acting on behalf of his Gift Card account –in fact sought and received a $4.95 administrative fee refund in May 2008—a fact of critical significance that is nowhere to be found in the Amended Complaint. Thus, Plaintiff actually received an administrative fee net surplus of $0.95.

Further, Defendants argue that even if the Court were to apply New Jersey law, federal preemption bars certain aspects of Plaintiff's CFA claim, and Plaintiff fails to adequately allege CFA standing. Defendants argue that the TCCWNA claim should be dismissed because Plaintiff is not a "consumer" under the Act, and because Plaintiff has not plead facts constituting a violation of the Act. They also argue that they did not unjustly retain a benefit with respect to Plaintiff's gift card.

Plaintiff has opposed the motion to dismiss, arguing that the Amended Complaint sets forth facts and allegations that adequately plead each claim.

The record, as supplied by the defense, indicates that on December 1, 2007, Plaintiff's gift card was used at a Borders, Inc. bookstore in Marlton, New Jersey for two transactions totaling $40.63. (Clukey Aff. ¶ 9.) The first such transaction totaled $19.23 and the second totaled $21.40, immediately following which a $9.37 balance remained on the gift card and in the gift card's electronic account maintained by NetSpend at its

Headquarters.  (Id.)  On December 8, 2007, the gift card was used at Regal Cinemas in Burlington, New Jersey for a $3.75 transaction, immediately following which a $5.62 balance remained on the gift card and in the gift card's electronic account.  (Id. ¶ 10.) Thereafter, for the period of December 10, 2007 through April 30, 2008, the Gift Card was not used for any transactions.  (Id. ¶ 11.)  On April 30, 2008, six months following the gift card's date of purchase, NetSpend, at its Headquarters, assessed the gift card's electronic account an administrative fee of $4.95, immediately following which the remaining balance of the gift card and the gift card's electronic account was $0.67.  (Id. ¶ 12.)

> On May 10, 2008, the following occurred with respect to the Plaintiff's Gift Card:
>
> -Shortly before 1:00 p.m. (EDT), someone attempted to use the Gift Card for a transaction in the amount of $41.33 at the United States Postal Service located in Mount Laurel, New Jersey. This attempted transaction was declined due to the Gift Card's insufficient funds in relation to the amount of the attempted transaction.
>
> -At approximately 7:30 p.m. (Eastern Daylight Time), twice within a matter of minutes, someone attempted to use the Gift Card for a transaction in the amount of $29.88 at McCormick & Schmick's Seafood Restaurant located in Cherry Hill, New Jersey. Both of these attempted transactions were declined due to the Gift Card's insufficient funds in relation to the amount of the attempted transactions.

(Id. ¶ 15.)

> On May 12, 2008, the following occurred with respect to the Plaintiff's Gift Card:
>
> -The purported cardholder called NetSpend's gift card balance inquiry "800" number and spoke with a customer service agent at NetSpend's call center located in Manila, Philippines (the "Manila call center").  NetSpend's Headquarters has supervisory authority with respect to the Manila call center.
>
> -At its Headquarters, NetSpend assessed the Gift Card's account a $0.50 telephone balance inquiry fee as an automatic consequence of the aforementioned balance inquiry phone call.  Immediately following the $0.50 balance inquiry fee assessment, the remaining balance of the Gift Card and its electronic account was $0.17.

-Within a few minutes of having called the balance inquiry "800" number, the purported cardholder accessed via www.allaccessgift.com – and, for a period of nearly 20 minutes, remained connected to – the Gift Card's electronic account.

-The information displayed on the initial computer screen viewable by the purported cardholder when accessing the Gift Card's account online would have included the Gift Card's $0.17 remaining balance and its entire transaction and balance history.

-The transaction and balance history, in turn, would have been displayed in a table entitled "posted transactions" containing the following five column headings: (1) "Posting Date"; (2) "Transaction" (beneath which is listed a description of each cardholder purchase, administrative fee (if any) levied on the account, and any other account activity resulting in a debit or credit to the account); (3) "Debit(-)"; (4) "Credit(+)"; and (5) "Balance."

-During the aforementioned May 12, 2008 phone call, the purported cardholder requested a refund of the entire $4.95 administrative fee assessment – i.e., not just the $2.00 difference between the $4.95 assessment and the $2.95 fee specified in the card's packaging and the Terms and Conditions –claiming that NetSpend's online information indicated that a waiver period of one-year (rather than six months) applied to the assessment of monthly administrative fees against remaining balances.

-Also during the aforementioned May 12, 2008 phone call, the purported cardholder thereafter requested a refund of the $0.50 balance inquiry fee.

-Additionally on May 12, 2008 – without agreeing with the purported cardholder's claim that a one-year waiver period applied to monthly administrative fees – the Manila call center reversed the entirety of the $4.95 administrative fee assessment, as a one-time courtesy specifically in response to the purported cardholder's May 12 request for a 100% refund of the administrative fee assessment (and without limiting NetSpend's option to grant a later request the same cardholder might make for a refund of just the over-charge portion of any future excess fee assessment that might be made in error). The Manila call center thereafter reversed the entirety of the $0.50 telephone balance inquiry fee as a last courtesy in connection with the purported cardholder's May 12 inquiry (i.e., a total of $5.45 in refunded assessments), immediately following which the remaining balance of the Gift Card and the Gift Card's electronic account was completely restored to $5.62.

(Id. ¶ 16.)

Thereafter, for the period of May 12, 2008 through May 31, 2008, the Gift Card

6

was not used for any transactions.  (Id. ¶ 17.)  For that same period, the balance of the Gift Card and Gift Card's electronic account remained $5.62.  (Id. ¶ 18.)  On May 31, 2008, NetSpend, at its Headquarters, assessed the Gift Card's electronic account an administrative fee of $4.95, immediately following which the remaining balance of the Gift Card and the Gift Card's electronic account was $0.67.  (Id. ¶ 19.)  On June 14, 2008, an attempt was made to use the Gift Card at a Target store in Burlington, New Jersey for a $6.82 transaction.  (Id. ¶ 20.)  The attempted transaction was declined due to insufficient funds.  Immediately thereafter, the Gift Card was used to successfully complete a $0.67 transaction at the same Target store, immediately following which the remaining balance of the Gift Card and the Gift Card's electronic account was $0.00.  (Id.)

## Applicable Standards

Federal Rule of Civil Procedure 12 governs a court's decision to dismiss a claim based on the pleadings.  See Fed. R. Civ. P. 12.  More specifically, Federal Rule of Civil Procedure 12(b)(1) governs a court's decision to dismiss a claim for "lack of subject matter jurisdiction" and Federal Rule of Civil Procedure 12(b)(6) governs a court's decision to dismiss a claim for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 12(b)(6).

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12 (b)(1) also governs a motion to dismiss for lack of standing, since "standing is a jurisdictional matter."  Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007).  Standing "is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution."  Public

Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997).  A plaintiff must establish his or her standing to bring a case in order for the court to possess jurisdiction over his or her claim.  Id.  The Supreme Court has "always insisted on strict compliance with this jurisdictional standing requirement."  Raines v. Byrd, 521 U.S. 811, 819 (1997).

At the pleading stage, the plaintiff can establish standing by demonstrating that (1) he or she "suffered an injury in fact, an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural, or hypothetical"; (2) there is a "causal connection between the injury and the conduct complained of - the injury has to be fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court"; and (3) "that the injury will be redressed by a favorable decision."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992).  "In other words, the plaintiff must show that he or she personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant and the injury must be concrete and capable of being redressed by the court should the plaintiff prevail on the merits."  Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188-89 (3d Cir. 2006).

Attacks on a plaintiff's standing may be either facial, in which the plaintiff's claim is attacked on the face of the complaint, or factual, in which "the existence of subject matter jurisdiction is attacked in fact, quite apart from any pleadings."  Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  See also Gould Electronics, Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000)  In facial attacks, courts must accept the plaintiff's well-pleaded factual allegations regarding standing as

true.  <u>Mortensen</u>, 549 F.2d at 891.  However, in factual attacks "[b]ecause at issue . . . is the trial court's jurisdiction . . . there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  <u>Id.</u> Thus, the plaintiff's allegations are not presumed to be true, the trial court may "evaluat[e] for itself the merits of the jurisdictional claims," and "the plaintiff will have the burden of proof that jurisdiction does in fact exist."  <u>Id.</u>

"[T]he existence of disputed material facts will not preclude [a] trial court from evaluating for itself the merits of jurisdictional claims."  <u>Id.</u>  "Moreover, a plaintiff will have the burden of proof that jurisdiction does in fact exist."  <u>Id.</u>  In <u>International Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.</u>, the Third Circuit outlined procedures for ensuring that a 12(b)(1) factual attack be based on an adequate factual record.  673 F.2d 700, 711–12 (3d Cir. 1982).  There, the court stated that "[i]f [a] defendant raises no challenge to the facts alleged in the pleadings, the court may rule on the motion by accepting the allegations as true."  <u>Id.</u> at 711.  However, "[i]f the defendant contests any allegations in the pleadings, by presenting evidence, the court must permit the plaintiff to respond with evidence supporting jurisdiction."  <u>Id.</u> at 711–12.  "The court may then determine jurisdiction by weighing the evidence presented by the parties."  <u>Id.</u> "If the plaintiff does not meet and controvert the defendant's factual assertions by affidavits or other sworn proofs, then the district court must determine whether it has subject matter jurisdiction based upon the factual context presented by the defendant." <u>Id.</u> at 712.

## B. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal

of a complaint based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating the plaintiff's claim, courts must accept the plaintiff's well-pleaded factual allegations as true and view the complaint in the light most favorable to the plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).

While the plaintiff need only plead "a short and plain statement of the claim showing that the pleader is entitled to relief," the plaintiff's complaint must nevertheless plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Fed. R. Civ. P. 8(a)(2). Thus, a complaint must allege facts that "raise a right to relief above the speculative level." Id. at 555. The complaint must contain sufficient factual matter to demonstrate that the plaintiff's allegations are not merely possible, but plausible. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## C. Asserting Fraud

A party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff must "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (quoting Lum v. Bank of Am., 361 F.3d 217, 223-24 (3d Cir. 2004)). Plaintiffs can satisfy the requirements of Rule 9(b) by "pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some

measure of substantiation into their allegations of fraud.'" Lum, 361 F.3d at 224

(quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d

Cir. 1984)).  A plaintiff must also "allege who made a representation to whom and the

general content of the misrepresentation."  Id.  The heightened pleading standards of

Rule 9(b) apply to claims of fraud brought under New Jersey law.  Frederico, 507 F.3d at

200.  To state a claim under the New Jersey CFA, a plaintiff must allege: 1) unlawful

conduct by the defendant; 2) an ascertainable loss by plaintiff; and 3) a causal

relationship between the unlawful conduct and the ascertainable loss.  Bosland v.

Warnock Dodge, Inc., 964 A.2d 741, 749 (N.J. 2009) (citing Int'l Union of Operating

Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc., 929 A.2d 1076 (2007)).

## D. Choice of Law

In a diversity case, such as this one, federal courts "determine which state's

substantive law governs by applying the choice-of-law rules of the jurisdiction in which

the district court sits." Garcia v. Plaza Oldsmobile Ltd., 421 F.3d 216, 219 (3d Cir. 2005)

(citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).  New Jersey's

choice of law regimen therefore guides this analysis.  Although New Jersey traditionally

has used a flexible governmental interest analysis "which requires application of the law

of the state with the greatest interest in resolving the particular issue," Gantes v. Kason

Corp., 679 A.2d 106, 109 (N.J. 1996), late in 2008, the New Jersey Supreme Court

expressly adopted the Restatement (Second) of Conflict of Laws's "most significant

relationship" test.  See P.V. v. Camp Jaycee, 962 A.2d 453 (N.J. 2008).  "Under that

standard, the law of the state of the injury is applicable unless another state has a more

significant relationship to the parties and issues."  Id. at 460.

New Jersey's most significant relationship test consists of two prongs.  The first prong of the analysis requires a court to examine the substance of the potentially applicable laws in order to determine if an actual conflict exists. <u>Camp Jaycee</u>, 962 A.2d at 460 (citing <u>Lebegern v. Forman</u>, 471 F.3d 424, 430 (3d Cir. 2006)).  The conflict is determined by whether a "distinction" exists between the substance of the potentially applicable laws.  <u>Id.</u>  Where there is no actual conflict, the analysis ends and the court applies the law of the forum state.  <u>See</u> <u>In re Ford Motor Co.</u>, 110 F.3d 954, 965 (3d Cir. 1997); <u>Rowe v. Hoffman-La Roche, Inc.</u>, 917 A.2d 767 (N.J. 2007).  Otherwise, the second prong of the most significant relationship test requires the court to weigh the factors enumerated in the Restatement section corresponding to the plaintiff's cause of action.  <u>See</u> <u>Camp Jaycee</u>, 962 A.2d at 461.

## Discussion

### A. Consumer Fraud

There is no dispute that an actual conflict exists between the consumer fraud laws of New Jersey and Texas.  The Texas statute does not provide for automatic treble damages, as New Jersey does.  In addition, the Texas consumer protection laws require that the complainant must have purchased or leased the goods or services.  New Jersey law contains no such restriction.  Further, in contrast to New Jersey, Texas expressly requires proof of justifiable reliance by a plaintiff on the defendant's deceptive acts.[4]

---

[4]Plaintiff has argued that insofar as Defendants have invoked Texas law as part of their Rule 12(b)(1) motion, such argument was waived, pursuant to Rule 12(g), when not raised in an earlier motion.

Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) on March 16, 2009.  Plaintiff filed an Amended Complaint on May 4, 2009, so this Court dismissed the Defendant's original motion as moot.  In response to the Amended

Therefore, the Court turns to the section of the Restatement (Second) of Conflicts that most closely corresponds to the fraud allegations of the Amended Complaint, section 148.  In determining which state has the most significant relationship to the occurrence and the parties, we consider:

> a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflicts, § 148(2).

Plaintiff's consumer fraud claim bears the most significant relationship with New Jersey.  Although Defendants are located in Texas, all other factors weigh in favor of allowing New Jersey's Consumer Fraud Act the opportunity to protect a New Jersey consumer who used the card at issue in New Jersey.  See Gennari v. Weichert Co.

---

Complaint, Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 9(b) on June 12, 2009; Plaintiff opposed the motion July 23, 2009; the arguments made as part of that motion and opposition are considered here.

On August 17, 2009, Defendants filed a second motion to dismiss, suggesting that the Court lacked subject matter jurisdiction because the CAFA amount in controversy could not be met.  That motion was fully briefed and argued.  As a result, the Court denied the motions to dismiss without prejudice, and granted limited discovery to assure that the amount in controversy was met.  In the Spring of 2010, Defendants conceded that under the parameters outlined in the Amended Complaint, the amount in controversy would be met.  Thereafter, Defendants reinstated the June 12, 2009 motion to dismiss the Amended Complaint for lack of subject matter jurisdiction and failure to state a claim.  The arguments made in that motion were never considered, and have not been waived.

Realtors, 691 A.2d 350, 365 (N.J. 1997) ( the purpose of the New Jersey CFA is to protect consumers from deception and fraud).

To state a claim under the New Jersey CFA, a plaintiff must allege "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss."  Bosland v. Warnock Dodge, Inc., 964 A.2d 741, 749 (2009) (citation omitted).  Similarly, to establish standing to bring such claim, a "plaintiff must show that he . . . personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant and the injury must be concrete and capable of being redressed by the court should the plaintiff prevail on the merits."  Taliaferro, 458 F.3d at 188-89.  Thus, "[t]he CFA contains its own standing requirement."  Barrows v. Chase Manhattan Mortgage Corp., 465 F. Supp. 2d 347, 360 (D.N.J. 2006).

As this Court has previously observed, Plaintiff has alleged unlawful conduct by Defendants in the form of several misrepresentations contained on the gift card's packaging.  Plaintiff claims that Defendants misrepresented the expiration date of the Gift Card: the representation that the card was good through 11.09 was necessarily false because the accumulation of monthly fees would make the $50 gift card valueless and unusable well before November 2009, even if no purchases were made.  Plaintiff contends that Defendants also misrepresented that "the funds on this card do not expire": again, this statement was necessarily false because the accumulation of monthly fees would make the $50 gift card "expire," even if no purchases were made.  Plaintiff contends that Defendants misrepresented the terms and the amount of the monthly fee charged by Defendants.  That is, the representation that "[t]he monthly administrative

14

fee of $2.95 will be waived for the first 6 months from the date of purchase" was necessarily false because (1) Plaintiff was charged a fee during the first six months, and (2) it was Defendants' practice and policy to charge and collect monthly fees in excess of $2.95 after the first six months.

Determining that Plaintiff has alleged an ascertainable loss causally connected to these alleged misrepresentations is more problematic. The undisputed evidence before the Court on this motion is that Plaintiff suffered an actual, concrete injury in the amount of two dollars. This loss was incurred because on May 31, 2008, Plaintiff's card was assessed an administrative fee of $4.95, when the monthly maintenance fee disclosed in the terms and conditions of the card packaging gave a figure of $2.95. Thus, this loss or injury has a causal nexus to the alleged misrepresentation. Plaintiff has sufficiently stated this claim, even under the stricter pleading standard of Fed. R. Civ. P. 9(b), which he had Article III standing to bring. Therefore, Defendants' motion will be denied as to this claim of consumer fraud.

Regarding the other alleged misrepresentations, however, Plaintiff has shown no concrete injury, no ascertainable loss. While Plaintiff makes a good point that the administrative fees could possibly cause the funds on a card to "expire" and render a $50 gift card valueless and unusable well before its "good through" date, Plaintiff neither alleged nor suffered any injury related to these alleged misrepresentations. Therefore, this Court does not have jurisdiction to entertain such claims, as Plaintiff is without standing to have brought them. Finally, insofar as Plaintiff intended to assert a claim for having been assessed a $4.95 monthly maintenance claim within six months of the purchase of the card, he suffered no injury because the entire $4.95 fee charged on April

30, 2008 was refunded.  Although a less attentive cardholder may have suffered an injury in fact or ascertainable loss from Defendants' potentially premature assessment of monthly fees, this Plaintiff did not.  Therefore, he cannot base a case or controversy on the circumstance that he may have been charged a fee during the card's first six months.

Defendants have argued that enforcement of the CFA against Inter National Bank and unaffiliated third parties would frustrate the exercise of Inter National's statutory powers under the National Bank Act, 12 U.S.C. § 1, and Office of the Comptroller of Currency ("OCC") regulations, and is therefore preempted.  The OCC authorizes national banks such as Inter National to sell gift cards subject to administrative fees that "may consume the card balance before the stated expiration date for the card arrives."  See OCC Bulletin 2006-34, 2006 WL 2384741, at *2 ("[I]f such fees may consume the card balance before the stated expiration date for the card arrives, disclosures relating to that expiration date (other than the disclosure on the front of the card) should explain that possibility.").  Regarding Plaintiff's State law claims predicated on allegedly deceptive and misleading marketing, however, other courts have held that such claims are not preempted.  See Mann v. TD Bank, N.A., Docket No. 09-1062 (RBK), 2009 WL 3818128 *5-*8 (D.N.J. Nov. 12, 2009); Mwantembe v. TD Bank, N.A., Docket No. 09-135, 2009 WL 3818745 *7 (E.D. Pa. Nov. 17, 2009).  See also Cuomo v. Clearing House Ass'n, L.L.C., 129 S. Ct. 2710, 2717 (2009) (allowing State attorneys general to file suit against national banks for violating State consumer protection laws, finding such suits were not preempted).  Regardless, Plaintiff cannot avail himself of the arguments regarding expiration date of card, as the Court has determined that he has suffered no damages related to the expiration date language included on the packaging.

**B. TCCWNA**

New Jersey's Truth-In-Consumer Contract, Warranty, and Notice states:

No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer . . . or give or display any written consumer warranty, notice or sign . . . which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law . . . .  Consumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes.

N.J. Stat. Ann. § 56:12-15.

Of course, the Court's analysis begins with the plain language of the statute. Miah v. Ahmed, 846 A.2d 1244, 1249 (N.J. 2004).  The plain language of TCCWNA limits "consumer" to one who buys services or property primarily for personal purposes. "[C]ase law limits the application of TCCWNA to the contracts stemming from the purchase of personal products or services directly from the seller."  Shelton v. Restaurant.com, Inc., Docket No. 10-cv-824 (JAP), 2010 WL 2384923 *6 (D.N.J. June 15, 2010).  See also Boyko v. American Intern. Group, Inc., Docket No. 08-cv-2214 (RBK), 2009 WL 5194431 *5 & n.3 (D.N.J. Dec. 23, 2009) (finding plaintiff was not a "consumer" under TCCWNA because defendant did not "sell, lease, lend, or bail any money or property to [p]laintiff" (emphasis added)).  Additionally, "[t]he plain language of TCCWNA only grants a remedy to aggrieved consumers and not to aggrieved 'prospective' consumers."  Shah v. American Express Co., Docket No. 09-cv-622 (JAP), 2009 WL 3234594 *3 (D.N.J. Sept. 30, 2009).

Plaintiff contends that by including in the gift card packaging a provision that states that Defendants will deduct a $2.95 monthly fee from the balance of the card after

the first six months, while Defendants instead deduct $4.95 as a monthly fee, they have included a provision not only violative of the NJCFA, but also that violates a clearly established right of the consumer or responsibility of the seller.  Indeed, considering the above, this is the only avenue that Plaintiff may have standing to pursue.  Under the plain language of the statute, however, the Court cannot find that Plaintiff meets the statutory definition of an aggrieved "consumer" because he did not purchase the gift card from Defendants.  Thus, Plaintiff lacks standing to pursue a claim under TCCWNA; that claim will be dismissed.

## C. Unjust enrichment

In New Jersey, an unjust enrichment claim requires a plaintiff to allege that (1) at plaintiff's expense, (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying for it.  In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517, 544 (D.N.J. 2004).  However, where an express contract governs the relationship of the parties, unjust enrichment is not an available means of recovery.  Suburban Transfer Service, Inc. v. Beech Holdings, Inc., 716 F.2d 220, 226-27 (3d Cir. 1983).  Plaintiff has based the allegations of the Amended Complaint on the gift card, its packaging, and terms and conditions, therefore an express contract governed the relationship of the parties.  As such, there is no basis or need for Plaintiff to resort to the quasi-contractual remedy provided by an unjust enrichment claim.  See Moser v. Milner Hotels, Inc., 78 A.2d 393, 394 (N.J. 1951); Winslow v. Corporate Express, Inc., 834 A.2d 1037, 1046 (N.J. Super. Ct. App. Div. 2003).  The claim for unjust enrichment will be dismissed.

## **<u>Conclusion</u>**

For the foregoing reasons,

IT IS ORDERED on this 19th day of January, 2012 that the renewed motion to dismiss the Amended Complaint is hereby <u>GRANTED IN PART</u> and <u>DENIED IN PART</u> as set forth above.

<u>/s/ Joseph H. Rodriguez</u>
JOSEPH H. RODRIGUEZ
U.S.D.J.
