## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FREDRIC J. BAKER,** )<br><br>  **Plaintiffs,** )<br><br>**v.** )<br><br>**INTER NATIONAL BANK, et al.,** )<br><br>  **Defendants.** ) | **Civil Action No. 08-5668 (JHR/KMW)** |

### ORDER PRELIMINARILY APPROVING SETTLEMENT
### AND DIRECTING NOTICE TO CLASS

The Court, having reviewed the Settlement Agreement entered into by the parties, hereby

Orders that:

1.     Upon the stipulation of the parties, the Court certifies a class for settlement

purposes only (the "Settlement Class"), pursuant to Fed. R. Civ. P. 23(b)(3), as follows:

> All persons who purchased or used an All-Access Visa Gift Card in the form
> attached to the Complaint, in any amount, in the State of New Jersey at any time
> during the time period from November 17, 2002 up to and including the date of
> the Settlement Agreement.

If the settlement is not finally approved, Defendants' stipulation to certification of the Settlement

Class shall be null and void and of no legal effect.

2.     The Settlement Agreement entered into between the parties on or about August

31, 2012, appears, upon preliminary review, to be fair, reasonable and adequate to the

Settlement Class.  Accordingly, the proposed settlement is preliminarily approved, pending a

Fairness Hearing as provided for herein.

3.     The Court finds the prerequisites to a class action under Fed. R. Civ. P. 23(a)

have been satisfied for settlement purposes in that:

(a)     there are approximately 13,164 All-Access Visa Gift Cards purchased or used in the State of New Jersey which were subject to Excess Administrative Fees during the Class Period, so there are thousands of members of the Settlement Class;

(b)     the claims of the Class Representative are typical of those of the other members of the Settlement Class;

(c)     there are questions of fact and law that are common to all members of the Settlement Class; and

(d)     the Class Representative will fairly and adequately protect the interests of the Settlement Class and has retained Class Counsel experienced in complex consumer class action litigation who have and will continue to adequately represent the Settlement Class.

4.     The Court finds this action is maintainable as a class action under Fed. R. Civ. P. 23(b)(3) for settlement purposes because (a) a class action is superior to other available methods for the fair and efficient adjudication of this controversy, and (b) questions of fact and law common to the members of the Settlement Class predominate over any questions affecting only individual members.

5.     Pursuant to Fed. R. Civ. P. 23, Plaintiff Fredric J. Baker is certified as the Settlement Class Representative. This Court certifies the firm of Francis & Mailman, P.C. as Lead Class Counsel, serving with Donovan Axler, LLC, as counsel for the Class (together "Class Counsel").

6.     The Court will hold a Fairness Hearing pursuant to Fed. R. Civ. P. 23(e) on _____, 2012 (100 days after entry of Preliminary Approval Order) in Courtroom _____ at _____, _.m. for the following purposes:

(a)     To finally determine whether this action satisfies the criteria for class certification set forth in Fed. R. Civ. P. 23(a) and (b);

(b)     To determine whether the proposed settlement is fair, reasonable and adequate and should be granted final approval by the Court;

(c)     To determine whether a final judgment should be entered dismissing the claims of the Class with prejudice, as required by the Agreement;

(d)     To consider the application of Class Counsel for an award of attorney's fees and expenses, and for an individual settlement award to the Class Representative; and

(e)     To rule upon other such matters as the Court may deem appropriate.

7.     Within fourteen (14) days of entry of this Order:

(a)     The Settlement Administrator shall have established a website which will contain, among other things, the Notice in the form attached to the Settlement Agreement as Exhibit B; the Claim Form attached to the Settlement Agreement as Exhibit D; the Amended Complaint in this case; the Defendant's Answer to the Amended Complaint; the Settlement Agreement; the Motion for Preliminary Approval of the Settlement; and, this Order Preliminarily Approving Settlement and Directing Notice to Class.

(b)     The Settlement Administrator shall send the Notice in the form attached to the Settlement Agreement as Exhibit B to the last known first class mailing address or email address of Settlement Class Members reflected in Defendants' records. For all email Notices returned undeliverable, the Settlement Administrator will send Notice by first class mail to any Settlement Class Member for whom Defendants' records contain mailing addresses. The

3

Settlement Administrator will also send first class Notice to any Settlement Class Member for whom Defendants have a record of a mailing address but not an email address.

(c) In order to provide notice to those Settlement Class Members for whom Defendants do not have direct contact information, the Settlement Administrator will also print the Publication Notice, in a form substantially similar to that attached to the Settlement Agreement as Exhibit C, once in each of the following New Jersey periodicals of general circulation, weekday editions: Newark Star-Ledger, Courier Post (Cherry Hill), Atlantic City Press and Trenton Times and once in the weekday national edition of USA Today.

(d) Not later than twenty (20) days before the Fairness Hearing, Defendants will cause a declaration to be filed with the Court that the Notice described above was given as required herein.

8. The Court finds this manner of giving notice fully satisfies the requirements of Fed. R. Civ. P. 23 and due process, constitutes the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled thereto.

9. The costs of printing and mailing the Settlement Notice and administering the settlement shall be paid by Defendants.

10. Counsel for Defendants shall file, no later than twenty (20) days before the Fairness Hearing, proof of mailing of the Settlement Notice.

11. If a Settlement Class Member chooses to Opt-Out of the Settlement Class, such Settlement Class Member is required to submit an Exclusion Request to the Settlement Administrator, post-marked on or before the date specified in the Class Notice, which shall be no later than thirty (30) days before the date of the Fairness Hearing or as the Court otherwise may direct. A Settlement Class Member who submits an Exclusion Request using the procedure

4

identified above shall be excluded from the Settlement Class for any and all purposes. No later than ten (10) days prior to the Fairness Hearing, Class Counsel shall prepare and file with the Court, and serve on Defendants' Counsel, a list of all persons who have timely opted out of the Settlement Class, as compiled by the Settlement Administrator. At that time, Class Counsel shall also supply its determinations as to whether any request to Opt Out of the Settlement Class was not submitted timely, and provide written notification to any Settlement Class Member whose request to Opt Out of the Settlement Class was not submitted on a timely basis.

12.     A Settlement Class Member who does not file a timely Exclusion Request shall be bound by all subsequent proceedings, orders, and judgments in this action. Any Class Member who submits a timely request for exclusion may revoke his or her request for exclusion by submitting to the Settlement Administrator a written statement of revocation, postmarked or received no later than fourteen (14) days before the date of the Fairness Hearing.

13.     No later than ten (10) days prior to the Fairness Hearing, Class Counsel shall prepare and file with the Court, and serve on Defendants' counsel, a list of all persons who have timely objected to the settlement.

14.     All briefs, memoranda, petitions and affidavits to be filed in support of final approval of the settlement, for an individual award to the Settlement Class Representative and for an award of attorney's fees and expenses shall be filed not later than ten (10) days before the Fairness Hearing.

15.     The Court retains exclusive jurisdiction over this action to consider all further matters arising out of or connected with the Settlement Agreement.

BY THE COURT:

_____

JOSEPH H. RODRIGUEZ, U.S.D.J.

Dated:

James A. Francis I.D. No.  JF 6355
Mark D. Mailman, I.D. No.  MDM 1122
John Soumilas, I.D. No.  JS 0034
**FRANCIS & MAILMAN, P.C.**
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

**Attorneys for Plaintiff**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **FREDRIC J. BAKER,** ) | |
| ) | **Civil Action No. 08-5668 (JHR/KMW)** |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| **INTER NATIONAL BANK, et al.,** ) | |
| ) | |
| Defendants. ) | |

## MOTION FOR PRELIMINARY APPROVAL OF CLASS
## ACTION SETTLEMENT AND NOTICE TO CLASS

Pursuant to Fed. R. Civ. P. 23(c), and for the reasons set forth more fully in the attached

Memorandum of Law, Plaintiff Fredric J. Baker moves the Court for an Order preliminarily

approving the settlement of this class action, approving the form and method for providing class-

wide notice and scheduling a hearing at which the following will be considered: request for final

approval of the proposed settlement, entry of the Final Judgment and Order and Plaintiffs'

request for approval of agreed-upon fees and costs.  Defendant does not contest the requested

relief.

Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**


*/s/ James A. Francis* _____
JAMES A. FRANCIS

Dated: September 11, 2012

James A. Francis I.D. No. JF 6355
Mark D. Mailman, I.D. No. MDM 1122
John Soumilas, I.D. No. JS 0034
**FRANCIS & MAILMAN, P.C.**
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

**Attorneys for Plaintiff and Class**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FREDRIC J. BAKER,** | ) |
| | ) |
| | ) **Civil Action No. 08-5668 (JHR/KMW)** |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **INTER NATIONAL BANK, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY
## APPROVAL OF CLASS ACTION SETTLEMENT AND NOTICE TO CLASS

Plaintiff Fredric J. Baker moves the Court for preliminary approval of a settlement of this

class action pursuant to Fed. R. Civ. P. 23 of the Federal Rules of Civil Procedure, and to

approve the proposed form of notice to the Settlement Class.[1]  With the Settlement Agreement,

---

1.     The Settlement Class is defined in the Settlement Agreement as "all persons who purchased or used an All-Access Visa Gift Card in the form attached to the Complaint, in any amount, in the State of New Jersey at any time during the Class Period."  The Class Period is defined as "the time period from November 17, 2002 up to the date of this Settlement Agreement."  As discussed below, while the exact number of Class members is not known, the Class definition embraces 13,164 Gift Cards, and the parties estimate that the actual Class size will be less, but not significantly so.

which is attached as Appendix 1 hereto, Plaintiff also submits: the proposed Order of Preliminary Approval (Exhibit A to Settlement Agreement); the proposed notices of settlement (Exhibits B, C, D to the Settlement Agreement); the proposed claim form (Exhibit E to the Settlement Agreement); and, a proposed Final Order and Judgment (Exhibit F to Settlement Agreement).

The substantive terms of the Settlement Agreement were negotiated vigorously and through zealous advocacy. Class Counsel are experienced consumer class action attorneys who are well-qualified to evaluate the proposed Settlement Agreement on behalf of the Class.

As set forth in more detail below, this settlement readily meets the criteria required for preliminary approval. First, in a consumer class action brought under the New Jersey Consumer Fraud Act, N.J.S.A. §56:8-2, which is remedial in nature, the settlement achieves significant practice changes by Defendants that will benefit thousands of American consumers in the future. Specifically, if approved, the settlement will result in practice changes by the Defendant which will remedy each of the allegedly unlawful acts and misrepresentations challenged by Plaintiff in the litigation.

Second, the settlement provides economic relief to Class Members in the maximum amount permitted by law if the Plaintiff prevailed at trial.

Third, the stage of the proceedings demonstrates the patent fairness and non-collusive nature of the settlement. It was only reached after approximately two and half years of litigation and substantial motion practice. The record leaves little doubt that the negotiations were conducted in an arms-length manner.

## I.    **NATURE OF THE LITIGATION**

This consumer class action originally asserted claims for violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. §56:8-2, the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. §56:12-15 and Unjust Enrichment against Defendants Inter National Bank and Netspend Corporation. The Complaint alleged that Defendants violated the rights of consumers by issuing "All Access Visa Gift Cards" that contained unlawful and deceptive marketing representations about the cards and by overcharging consumers an Administrative Fee associated with the cards. The Complaint asserted that the packaging of the cards contained the following 3 misrepresentations about the cards, namely that:

      (a)    the cards were "good through 11.09;"

      (b)    "The funds [did] not expire"; and,

      (c)    "The monthly administrative fee of $2.95 [would] be waived for the first 6 months from date of purchase."

Moreover, Plaintiff alleged that Defendants were charging consumers Administrative Fees in advance of the six month period before which Administrative fees would take effect and excessively assessing an Administrative Fee of $4.95 as opposed the $2.95 Administrative Fee represented.

Mr. Baker filed this action in the United States District Court for the District of New Jersey on November 17, 2008 (Dk. No. 1) and filed an Amended Complaint on May 4, 2009 (Dk. No. 37) against Defendants Inter National Bank and Netspend Corporation.

Thereafter, the case entered into a period of significant and seemingly unending motion practice. The matter was vigorously defended by Defendants. Defendants filed an initial motion

to dismiss (Dk. No. 25) after the original Complaint was filed and a second motion to dismiss (Dk. No. 44) after an Amended Complaint was filed. Defendants raised numerous legal defenses in their motion regarding merits of Plaintiff's claims, choice of law, constitutional standing and the adequacy of the pleadings. Defendants also vigorously challenged the subject-matter jurisdiction of the Court raising arguments about the amount in controversy relative to the limitations of the Class Action Fairness Act ("CAFA") (Dk. No. 53). Defendants further reasserted their motion to dismiss after the Court permitted Plaintiff to conduct discovery on the amount in controversy, and Defendants conceded that CAFA jurisdiction was present (Dk. No. 71-1). Plaintiff in turn responded to these legal motions which required substantial research and consideration and time spent briefing and arguing the legal issues. The Court heard several oral arguments related to the subjects of Defendants' motions.

The Court entered a Memorandum Opinion and Order on January 19, 2012 regarding the legal issues raised on Defendants' renewed motion to dismiss. *See Baker v. Inter National Bank et al.*, 2012 WL 174956 (D.N.J. Jan. 19, 2012). In its ruling, the Court dismissed Plaintiffs' claims for violation of the TCCWNA and Unjust Enrichment. In addition, the Court held that Plaintiff did not have standing to challenge Defendants' first two alleged misrepresentations outlined above. As such, Plaintiff was left with a CFA claim relating to Defendants' overcharging of the Administrative Fee associated with the cards.

Thereafter, the parties began negotiation in earnest which involved numerous telephone conferences between the parties. After approximately four months of negotiations, the parties were able to reach general terms of a settlement that were acceptable to both parties in May 2012, subject to documentation and working out details, and requested that the Court set deadlines for the filing of the instant motion.

## II.   **ELEMENTS FOR CERTIFICATION OF A CLASS SETTLEMENT**

In considering the proposed settlement, the first question for the Court is whether a settlement class may be conditionally certified for settlement purposes. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23).

Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions. One or more members of a class may sue as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

The parties have reached a proposed agreement on behalf of the Settlement Class defined above in note 1. In support of their contention that proper and sufficient grounds for class certification exist under Rule 23, the parties would show the following:

### A.   **Numerosity**

In applying this rule, it has consistently been held that joinder is impracticable where the class is composed of hundreds of potential claimants; indeed, impracticability of joinder has often been found where the class is composed of less than 100 members. *See, e.g., Eisenberg v. Gagnon*, 766 F.2d 770, 785-86 (3d Cir. 1985) (90 class members meets numerosity requirement); *Weiss v. York Hospital,* 745 F.2d 786, 808 (3d Cir. 1984) (92 class members meets the numerosity requirement).

Defendants estimate that the Class definition embraces 13,164 Gift Cards.   *See*

Settlement Agreement at p. 5. These numbers are certainly sufficient to establish that joinder is impracticable.

**B.    Commonality**

Plaintiff also asserts that there are questions of law or fact common to the Class, including the following:

    1. Whether Defendants' Gift Card constitutes the use of an unconscionable commercial practice, deception, fraud, false pretense, false promise, or misrepresentation in violation of the CFA;

    2. Whether Defendants' Gift Card constitutes the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in violation of the CFA;

    3. Whether the provision that a $2.95 monthly fee will be charged on the Gift Card after 6 months has diminished the value of those Gift Cards and whether that reduction in value constitutes an ascertainable loss under the CFA; and

    4. Whether the charging of a $4.95 monthly dormancy or maintenance fee has diminished the value of those Gift Cards and whether that reduction in value constitutes an ascertainable loss under the CFA.

The theories of liability are precise because they arise from the same standard practice and present basic questions that are common to all Class members. Cases presenting standardized practices directed at consumers invariably present common predominating issues. *See Perry v. FleetBoston Financial Corp.,* 229 F.R.D. 105 (E.D. Pa. 2005) (finding Rule 23 requirements met in consumer class action and noting cases routinely certified where 'defendants have engaged in standardized conduct towards members of the proposed class by mailing to

them allegedly illegal form letters or documents.'" (citing cases).  *See also Weiss v. Regal Collections*, 385 F.3d 337, 344-45 (3d Cir. 2004) (claims arising from statements contained in standard collection communications particularly appropriate for class action).

Inasmuch as the Defendants' policies and practices with respect to such conduct were essentially uniform with regard to these issues, commonality is satisfied.  Indeed, a single common question is sufficient enough to satisfy the requirements of Rule 23(a)(2).  *See, e.g., Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).  Where, as here, the defendant engaged in standardized conduct toward putative class members, commonality is satisfied.  *In re Prudential Insurance Company America Sales Practice Litigation*, 148 F.3d 283, 310 (3d Cir. 1998).

### C. Typicality

This requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Prudential*, 148 F.3d at 311.  The threshold for establishing typicality is low. Typicality does not require that the claims of the class members be identical.  *Eisenberg v. Gagnon*, 766 F.2d at 786.  Rather, a plaintiff's claims are typical when the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating her personal claims she can reasonably be expected to advance the interests of absent class members. *See, e.g., General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 156-157 (1982).

Plaintiff is a member of the Settlement Class, has the same interest in resolution of the issues as all other members of the Class and his claims are typical of all members of the Class. Plaintiff was inappropriately charged the fees at issue by Defendants in the same manner as all members of the Class.  These facts, and Plaintiff's claims, are therefore typical of the facts and

claims of all other members of the proposed Settlement Class. *See Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1998).

### D.    Adequacy of Representation

A representative plaintiff must be able to provide fair and adequate protection for the interests of the class.   That protection involves two factors: (a) the representative plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the representative plaintiff must not have interests antagonistic to those of the Class. *See, e.g., In re Prudential*, 148 F.3d at 312; *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982).

Plaintiff fairly and adequately represents the interests of the Class.   He has retained qualified and experienced attorneys to represent him in this matter.   The attorneys have substantial experience in class action and consumer litigation and are qualified to conduct the litigation.   As this Court recently held in ruling on a contested motion for class certification, *Summerfield v. Equifax Information Services, LLC*, 264 F.R.D. 133, 141 (D.N.J. 2009), the undersigned counsel "is indeed 'qualified, experienced, and generally able to conduct' this litigation." A more recent decision from the District of Maine held the same. *LaRocque v. TRS Recovery Services, Inc.*, 2012 WL 2921191 (D. Me. July 17, 2012). *See also Perry, supra* (court finding that "I and a number of my colleagues have previously found that class counsel Francis & Mailman, P.C. and Donovan Searles LLC, possesses the skill, experience and qualifications necessary to conduct litigation similar to the present lawsuit. *Oslan v. Collection Bureau of Hudson Valley*, 206 F.R.D. 109, 112 (E.D. Pa. 2002); *see also, e.g., Orloff v. Syndicated Office Systems, Inc.*, 2004 WL 870691, *4 (E.D. Pa 2004) (Surrick, J.); *Bonett v. Education Debt Services, Inc.*, 2003 WL 21658267, *3 (E.D. Pa. 2003) (Davis, J.); *Saunders v. Berks Credit &*

*Collections,* 2002 WL 1497374, *8 (E.D. Pa. 2002) (DuBois, J.))." 229 F.R.D. at 112-13.[2]

Moreover, Plaintiff has no interests that are antagonistic to the interests of the Class, and is unaware of any actual or apparent conflicts of interest between him and the Class.

### E.  Rule 23(b)(3) Considerations

The proposed settlement contemplates a class certification permitting opt-outs pursuant to Rule 23(b)(3). An action may be maintained as a class action if the four elements described above are satisfied, and in addition, the conditions under Rule 23(b)(3) are met requiring that

---

[2]      *See also Barel v. Bank of America,* 2009 WL 122805 (E.D. Pa. Jan. 16, 2009) (Surrick, J.); *Markocki v. Old Republic National Title Ins. Co.,* 2008 WL 5159252 (E.D. Pa. Dec. 9, 2008) (Tucker, J.); *Strausser v. ACB Receivables Management, Inc.,* 2008 WL 859224 (E.D. Pa. Mar. 28, 2008) (O'Neill, J.); *Allen v. Holiday Universal, Inc.,* 249 F.R.D. 166 (E.D. Pa. 2008); (Pratter, J.); *Cohen v. Chicago Title Ins. Co.,* 242 F.R.D. 295 (E.D. Pa. 2007) (Sánchez, J.); *Jordan v. Commonwealth Financial Systems, Inc.,* 237 F.R.D. 132 (E.D. Pa. 2006) (Davis, J.); *Braun v. Wal-Mart Stores, Inc.,* 2005 WL 3623389 (Pa.Com.Pl. Dec. 27, 2005); *Beck v. Maximus, Inc.,* 2005 WL 589749 (E.D. Pa. March 11, 2005); *Stoner v. CBA Information Services,* 352 F.Supp.2d 549 (E.D. Pa. 2005); *Orloff v. Syndicated Office Systems, Inc.,* 2004 WL 870691 (E.D. Pa. April 22, 2004); *Petrolito v. Arrow Financial Services, LLC,* 221 F.R.D. 303 (D. Conn. 2004); *Gaumer v. The Bon-Ton Stores,* C.A. No. 02-8611 (E.D. Pa. Dec. 30, 2003) (Yohn, J.); *Wells v. Coldata, Inc.,* C.A. No. 02-6609 (E.D. Pa. Nov. 20, 2003) (Brody, J.); *Muse v. Dymacol, Inc.,* 2003 WL 22794698 (E.D. Pa. Nov. 7, 2003) (Savage, J.); *Street v. Portfolio Recovery Associates,* C.A. No. 01-3684 (E.D. Pa. July 30, 2003) (Tucker, J.); *Piper v. Portnoff Law Associates, Ltd.,* 215 F.R.D. 495 (E.D. Pa. 2003) (Katz J.); *Oslan v. Law Offices of Mitchell N. Kay,* 232 F. Supp.2d 436 (E.D. Pa. 2002) (Katz, J.); *Samuel-Bassett v. Kia Motors America, Inc.,* 212 F.R.D. 271 (E.D. Pa. 2002) (Joyner, J.) (class certified for breach of warranty claims), *vacated on other grounds,* 357 F.3d 392 (3d Cir. 2004); *Schilling v. Let's Talk Cellular and Wireless, Inc.,* 2002 WL 391695 (E.D. Pa. Feb. 6, 2002) (Robreno, J.); *Colbert v. Dymacol, Inc.,* 2001 WL 34083813 (E.D. Pa. Oct. 2, 2001) (Newcomer, J.) (striking offer of judgment and granting motion for class certification), *appeal dismissed as improvidently granted,* 344 F.3d 334 (3d Cir. 2003) (unanimous *en banc* decision); *Fry v. Hayt, Hayt & Landau,* 198 F.R.D. 461 (E.D. Pa. 2000) (Robreno, J.); *Smith v. First Union Mortgage Corp.,* 1999 WL 947398 (E.D. Pa. Aug. 23, 1999) (Waldman, J.); *Williams v. Empire Funding Corp.,* 183 F.R.D. 428, 440 (E.D. Pa. 1998) (Robreno, J.) (class certified for rescission claims under Truth in Lending Act).

> the Court finds that the questions of law or fact common to the members of the
> Class predominate over any questions affecting only individual members, and that
> a Class action is superior to other available methods for the fair and efficient
> adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3). The requirement that the questions of law or fact common to all

members of the Class predominate over questions pertaining to individual members is normally

satisfied where plaintiffs have alleged a common course of conduct on the part of the defendant.

*Prudential*, 148 F.3d at 314-315.

Plaintiff has alleged such a common course of conduct by the Defendants. Class

members were inappropriately charged and paid fees without proper notice. The predominating,

indeed the dispositive, issue is whether Defendants violated the CFA by engaging in these

practices.

A class action in this case is superior to other available methods for the fair and efficient

adjudication of the controversy because a class resolution of the issues described above

outweighs the difficulties in management of separate and individual claims and allows access to

the courts for those who might not gain such access standing alone, particularly in light of the

relatively small amount of the actual and statutory damage claims that would be available to

individuals. In numerous cases, courts have recognized that Rule 23(b)(3) certification is

particularly appropriate for consumer claims such as those asserted here. *See, e.g., Amchem*, 521

U.S. at 617 ("The policy of the very core of the class action mechanism is to overcome the

problem that small recoveries do not provide the incentive for any individual to bring a solo

action prosecuting his or her rights"). Moreover, such a certification permits individual

claimants to opt-out and pursue their own actions separately if they believe they can recover

more in an individual suit. Thus, both predominance and superiority are satisfied.

Solely for the purposes of settlement, Defendants does not dispute that the Class should be certified in accordance with Rule 23(b)(3). Accordingly, the Court should conditionally certify the Class for settlement purposes.

## III.   NATURE OF SETTLEMENT

Representative Plaintiff Baker and Defendants have agreed, subject to this Court's approval, to a settlement of this litigation on a class-wide basis. The terms of the settlement are set out in the Settlement Agreement attached hereto as Appendix I. The settlement is fair, reasonable and sound in light of the relevant facts, the applicable law, and the benefits conferred by the settlement to the Class.

### A. The Settlement Class.

The class is defined as:

all persons who purchased or used an All-Access Visa Gift Card in the form attached to the Complaint, in any amount, in the State of New Jersey at any time during the Class Period.

Appendix I, at 7-8. The Class Period is defined as "the time period from November 17, 2002 up to the date of the Settlement Agreement." The Settlement Class excludes the following persons: (i) any and all Gift Card owners who have previously requested and obtained a refund of any Administrative Fees assessed against the Gift Card as alleged in the Complaint; (ii) Defendants' officers, directors, employees, agents, counsel and their assigns; (iii) all persons who have already settled or otherwise compromised or released their Gift Card Claim; (iv) all persons who elect to Opt-Out; and (v) any judge in the United States District Court, District of New Jersey. While the exact number of Class members is uncertain, the Class definition embraces 13,164 Gift Cards, and the parties estimate that the actual Class size will be less, but not significantly so.

**B. Settlement Benefits.**

The Settlement Agreement proposes both equitable and compensatory relief. The Settlement Agreement provides for equitable relief in the form of revisions to the marketing of Defendants' gift cards. *See* App. I, at 9-10. The Settlement Agreement also reimburses class members who complete a claim form three times the average Excessive Administrative Fees that were assessed. *Id.* at 17.

### 1. Revisions to the Disclosures on Defendants' All-Access Visa Gift Card.

The Settlement Agreement dictates that Defendants will make the following changes to the representations that they make in connection with the sale of All-Access Visa Gift Cards:

- The correct amount of any Administrative Fees to which the Gift Card is subject will be reflected on the card, the packaging or the accompanying literature;

- Defendants will not represent that the funds on the Gift Card do not expire, if in fact, the card could become devoid of value over the course of time due to fees or inactivity regardless of the recipient's use without providing the following notice: 'Fees charged and collected reduce the amount of money available on the card. The card will lose some or all of its value prior to the expiration date as a result of the fees charged and collected';

- Defendants will not represent a "good through" date if in fact the card could be reduced to a zero balance before then due to the assessment of administrative fees regardless of the recipient's use without providing the following notice: 'Fees charged and collected reduce the amount of money available on the card. The card will lose some or all of its value prior to the expiration date as a result of the fees charged and collected.'

*Id.* at 9-10. These changes would effect and provide relief for, not only the Settlement Class members, but also all future consumers who may purchase or use an All-Access Visa Gift Card. The changes proposed by the Settlement Agreement would make the fees associated with the product clearer and more understandable to those consumers. As a result of these proposed practice changes, consumers will be present and future beneficiaries of a more accurate and informative disclosures on the product.

- 12 -

### 2. Settlement Class Members to Be Reimbursed Three Times the Average Excessive Administrative Fees Assessed.

Defendants agree to establish a Settlement Fund by depositing therein the total sum of $115,312.70. *See id.*, at 9. Settlement Class Members who file a timely, complete, and accurate Claim Form will receive cash reimbursement from the Settlement Fund of three times the average Excess Administrative Fee assessed against Settlement Class Member's Gift Cards during the Class Period so long as the total amount of the Settlement Fund is sufficient to make such reimbursements to all such Settlement Class Members. *See id.* at 17. Defendants have represented that the average Excess Administrative Fee has been calculated to be $4.38. *Id.* In the event the Settlement Fund is not sufficient to reimburse all such claims, then each Settlement Class Member who submits such a claim will be entitled to his or her pro-rata share reimbursement from the Settlement Fund.

### 3. Costs of Notice.

The parties have agreed that Defendants will pay all costs associated with the Notice Program set forth in the Settlement Agreement. *See id.* at 16.

### 4. Service Award for Class Representative

Subject to court approval, the parties have agreed that the representative Plaintiff will be paid an award of $6,000 by the Defendants, and to which the Defendants will not object, for his services in connection with representing the Class.

### 5. Attorneys' Fees and Costs.

Subject to court approval, Defendants have agreed to pay, and agrees not to object or engender objection, to no more than $300,000 which represents the combined attorney's fees and costs incurred by Class Counsel in the prosecution of the litigation. This payment will in no way

- 13 -

affect the benefits received by the Settlement Class members. *Id.* at 22. Additionally, the amount of attorneys' fees and expenses to be paid to Class Counsel was not agreed to by the parties until agreement was reached in principle on the other terms of this Settlement Agreement. Plaintiffs will submit a separate fee petition ten days prior to the Fairness Hearing, which will include Plaintiff's detailed request for attorneys' fees and costs.

### 6. Class Notice.

The settlement provides for Defendants to administer the settlement with the assistance of a mutually agreed upon third party administrator to effectuate the compiling and mailing of the Class Notice. This entails the compiling of a consumer list of all members of the Settlement Class, which Defendants will compile from its account records. Defendants shall provide the consumer list to the Settlement Administrator for purposes of sending the Class Notices. *Id.* at 14-15. The proposed Class Notices, attached as Exhibits B, C and D to Appendix I, are clear and provide Settlement Class members with adequate information to make an informed decision as to whether they should remain in the Class, opt out, or object to any part of the proposed settlement. *Id.* at Ex. B. Once the consumer list is compiled, the Settlement Agreement requires that Defendants cause the Settlement Administrator to send the Class Notice by email, or by first-class mail if Defendants possess a mailing address but not an email address for any Class member. *Id.* at 15. If an email is returned as undeliverable, Notice will be sent by first-class mail if Defendants possesses a mailing address for that member. Defendants will also print Publication Notice for Class members for whom Defendants do not possess either an email address or mailing address as set forth in the Settlement Agreement. *Id.*

## IV.    ARGUMENT

### A. Standards for Preliminary Approval Of A Class Settlement

When a proposed class-wide settlement is reached, it must be submitted to the Court for approval.  H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2009) ("NEWBERG").  Preliminary approval is the first of essentially three steps that comprise the approval procedure for settlement of a class action.  The second step is the dissemination of notice of the settlement to all Class members.  The third step is a settlement approval or final fairness hearing.  *See* MANUAL FOR COMPLEX LITIGATION 4TH, § 21.63 (2004), *available at* http://www.fjc.gov ("MANUAL").  While a settlement class must satisfy each of the requirements of Rule 23(a) and Rule 23(b)(3), "the fact of settlement is relevant to a determination of whether the proposed Class meets the requirement imposed by the Rule."  *In re: Prudential Ins. Co. of America Sales Litigation*, 148 F.3d 283, 308-09 (3d Cir. 1998)).

The question presented on a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement appears fair and reasonable.  MANUAL at § 21.62; There is an initial presumption of fairness when a proposed settlement, which was negotiated at arm's length by counsel for the Class, is presented for court approval.  NEWBERG, § 11.41. *See also In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The . . . high judicial favor for negotiated settlements of litigation is particularly keen in class actions. . .where substantial judicial resources can be conserved by avoiding formal litigation.")

The approval of a proposed settlement of a class action is a matter within the broad discretion of the trial court.  Of course, settlements of class actions are favored in the law. *See In re: General Motors Truck Litigation*, 55 F.3d 768, 784 (3d Cir. 1995).  Preliminary approval

does not require the trial court to affirmatively answer the ultimate question of whether a proposed settlement is fair, reasonable and adequate. That determination is made only after notice of the settlement has been given to the members of the Class and after they have been given an opportunity to voice their views of the settlement or be excluded from the Class. *See Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).

The question of whether a proposed settlement is fair, reasonable and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "the terms of the compromise with the likely rewards of litigation." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *Collier v. Montgomery County*, 192 F.R.D. 176, 184 (E.D. Pa. 2000) (citing factors established in *Girsh*, 521 F.2d 153). Therefore, many courts recognize that the opinion of experienced counsel[3] supporting the settlement is entitled to considerable weight. *See Collier*, 192 F.R.D. at 186.

In addition to being substantively reasonable in relation to the risks and likely rewards of litigation, the proposed settlement must be "the result of good faith, arms length negotiations." *Collier*, 192 F.R.D. at 184. In evaluating this requirement, courts proceed as follows:

> If the proposed settlement appears to be the product of serious informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to Class Representatives or segments of the Class, and falls within the range of possible approval, then the court should direct that notice be given to the Class Members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement.

*Id.* A finding that these factors are present establishes an initial presumption of fairness. *Id.*; *see also General Motors*, 55 F.3d at 785-86. Here, the proposed settlement easily meets these standards.

---

[3]     *See* note 2, *supra*.

**B.    The Terms of the Proposed Settlement are Fair, Reasonable and Adequate**

The proposed settlement is reasonable when considered in light of disputed liability and the cognizable damages that members would otherwise have been permitted to recover if successful under the NJCFA.   These factors demonstrate that the proposed settlement is an excellent result for the Class.

Given that the Court's January 19, 2012 Order and Memorandum dismissed Plaintiff's claims for violation of the TCCWNA and Unjust Enrichment, and found that Plaintiff was not adequate to challenge two of the Defendants' alleged misrepresentations, Plaintiff was left solely with the CFA claim arising from Defendants' overcharge of the cards' Administrative Fee, which affected 13,164 cards.   Damages for a successful claim under the NJCFA are capped at treble damages for each member's ascertained loss.   N.J.S.A §56:8-2.   The result here is exactly the same as what any member might reasonably expect to recover by proceeding to all the way to trial, namely, three times what they were overcharged.   Thus, this settlement avoids the litigation risk to the Class yet secures the similar relief that would otherwise be obtainable after trial.

The proposed settlement is the product of serious, informed and non-collusive negotiations.   Defendants have continued to deny any wrongdoing or legal liability arising out of the conduct alleged in this action.   Nonetheless, Defendants have concluded that it is desirable that this action be settled in the manner and upon the terms and conditions set forth in the Settlement Agreement in order to avoid the expense, inconvenience, and burden of further legal proceedings, and the uncertainties of trial and appeals.

The Representative Plaintiff and his counsel recognize the expense and length of a trial in this action against Defendants through possible appeals, which could take several more years. They have also taken into account the time already invested in this case, the uncertain outcome

- 17 -

and risk of litigation.  Representative Plaintiff and his counsel believe that the settlement set forth in the Settlement Agreement confers substantial immediate benefits upon the Settlement Class.  Representative Plaintiff and his counsel have determined that the settlement is in the best interest of the Settlement Class.

The proposed settlement has no "obvious deficiencies" and falls well within the range for approval.  Moreover, and just as important in counsel's estimation, this action and the settlement have resulted in Defendants cessation of the allegedly unlawful practice, and essentially achieves a settlement injunction.  As such, the settlement provides a societal benefit as well.

As noted, settlements of class action disputes are favored in the law, to bring finality and to conserve judicial resources.  *General Motors*, 55 F.3d at 783.  Settlement of consumer class actions otherwise involving individual claims for small sums, such as the instant action under the FCRA, are particularly well suited to class settlement.

The settlement does not improperly grant preferential treatment to the Class Representative or segments of the Class.  The relief provided in the settlement will benefit all Class members equally.  The amount payable to the Representative Plaintiff is reasonable in that he has participated in the litigation of this action, rendered substantial services on behalf of absent Class members.  *See Barel v. Bank of America*, 2009 WL 122805, *12 (E.D. Pa. Jan. 16, 2009) (awarding class representative $10,000).  *See also Perry v. FleetBoston Financial Corp.*, 229 F.R.D.105 (E.D. Pa. 2005) (awarding $5,000 each to three representative plaintiffs in class settlement); *Bonett v. Education Debt Services, Inc.*, 2003 WL 21658267, *7 (E.D. Pa. May 9, 2003) (awarding $4,000 to class representative in class settlement, citing cases).

At the Fairness Hearing, movants anticipate a final judgment giving effect to the Settlement Agreement and dismissing without prejudice all claims of any purported Settlement

- 18 -

Class members who have been excluded from the Settlement Class as set forth above.  Upon confirmation of the settlement at the Fairness Hearing and performance by Defendants of all of its obligations under the Settlement Agreement, Defendants will be fully, finally and completely released of all liability for damages to the Class.

## V.   CONCLUSION

Accordingly, Plaintiff Fredric J. Baker requests that the Court grant preliminary approval of the class action settlement, as set forth in the proposed Order of Preliminary Approval.

Date: September 11, 2012                    Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**

*/s/ James A. Francis*
JAMES A. FRANCIS
100 South Broad Street, 19th Floor
Philadelphia, PA 19110
(215) 735-8600

**DONOVAN AXLER, LLC**
NOAH I. AXLER
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
(215) 732-6067

**CERTIFICATE OF SERVICE**

I, **JAMES A. FRANCIS**, do hereby certify that, on this date, I caused a true and correct copy of the foregoing Motion for Preliminary Approval of Class Action Settlement and Notice to Class to be served via the Court's ECF Notification system upon the following counsel of record:

Kelly S. Crawford, Esquire
Riker Danzig Scherer Hyland & Perretti, LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981

Attorneys for Defendants Inter National Bank
And Netspend Corporation

**FRANCIS & MAILMAN, P.C.**

/s/ James A. Francis
JAMES A. FRANCIS
Attorney for Plaintiff
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

Dated: September 11, 2012